Donahue, J.
 

 There is no conflict of evidence in this record upon any point material to the disposition of this case. The only question presented by the record is whether at the time Peebles repurchased this tract of land from The Yellow Poplar Lumber Company this roadway that was then being used by The Yellow Poplar Lumber Company over its own property was a way appurtenant to the 3-acre tract. This claim cannot be sustained upon any theory of right reasoning. This land was owned by The Yellow Poplar Lumber Company and its predecessors in title in fee simple. That it devoted this tract to road purposes for its own convenience in no way affects the question. This 30-foot strip was purchased in fee simple by the board of trade of Portsmouth, Ohio, yet evidently it was
 
 *320
 
 purchased for the purpose of a roadway from the pike to the 6.24-acre tract purchased by it at the same time from the Rhodes heirs. It was in fact a part and parcel of this same purchase, and so far as source of title is concerne4 had nothing whatever to do with the 3 acres purchased from Peebles. That transaction was separate and apart from the purchase of the Rhodes land by the board of trade. This 30-foot strip was not purchased for the purpose of the Peebles 3-acre tract as a way appurtenant to it. The situation is not different than it would be had these 3 acres of the Peebles tract been purchased by a person or corporation other than the owner of the Rhodes tracts. In such case the only way this 30-foot strip off of the Rhodes farm could become a way appurtenant to the Peebles tract would be by purchase or prescription. The use of this strip of land as a roadway by The Little Kanawha Lumber Company, which was then the owner of all these tracts, for its own convenience, could not create a title by prescription or start the running of the statute cf limitations. It had a right as the owner of this land to travel over any part of it in any direction, and that it chose to locate its roadway over this strip of land was a matter of no concern whatever to strangers to the title. The time that this strip was used as a roadway by the owner of all the property can not be included in the prescriptive period with the time it was used as a roadway by Peebles and his devisees and their grantees after The Yellow Poplar Lumber Company had conveyed this 3-acre tract to Peebles, even though it should be held that the later use of this roadway by defendant in error and its predecessor in title in
 
 *321
 
 common with the owner of the other tracts was an adverse user.
 

 When this 3-acre tract of land was reconveyed to Peebles by The Yellow Poplar Lumber Company Peebles must have known the history, of this entire transaction. He knew when he deeded it to The Little Kanawha Lumber Company that there was then no way appurtenant to it. When he accepted the surrender of this lease and the reconveyance of this land his farm lines were just the same as before he had sold or leased any part of his farm to The Little Kanawha Lumber Company. He could then travel over and across his own land to the Gallia pike, and that being the fact he could not claim a way of necessity over the adjoining land of his grantor. The deed from The Yellow Poplar Lumber Company to Peebles of this 3-acre tract did not purport to grant any rights or easements in this particular 30-foot strip. The grant in that deed is as follows: “All the estate, title and interest of said grantors, either in law or in equity of, in and to said premises, together with all the privileges and appurtenances to the same belonging.”
 

 It is clear that unless this was at that time a way appurtenant to this 3-acre parcel of land, this deed did not convey to Peebles any interest or rights therein. That it was not at that time or at any other time a way appurtenant to the 3-acre tract is too clear for dispute. The use of this roadway by the owner was not different than if it had been used in connection with the leased land. The fact that it did serve the purpose of a way to this 3-acre tract, with other tracts, while all this property was owned
 
 *322
 
 and occupied by the same owner, does not evidence any intention on the part of the owner to devote this parcel to the use of the 3 acres as a way appurtenant thereto. When the sawmill business was discontinued upon this and the adjoining tract Peebles repurchased this land at the price that he had agreed to pay for it in the deed from himself to The Little Kanawha Lumber Company. It may be, however, that that provision of his deed to The Little Kanawha Lumber Company did not control the price that he paid for this property. It is nevertheless a significant fact. It is hardly within the range of possibility that he believed or expected that he was purchasing from The Yellow Poplar Lumber Company any more than he had granted to its predecessor in title, The Little Kanawha Lumber Company, except the structures or parts of structures still standing thereon. After the sale to Peebles of this 3-acre tract it practically lost its identity as a separate parcel and became a part of the original Peebles farm, as it was before the original conveyance. Later a deed was made by Peebles’ devisees of a 4-acre parcel of this land to The Portsmouth Rim
 
 &
 
 Spoke Company. The fact that this 4-acre tract included the 3-acre tract originally deeded by Peebles to The Little Kanawha Lumber Company has little or no significance. It might just as well have been any other 4-acre tract out of his farm. .The claim that this roadway had become appurtenant to the 3-acre tract could not by any flight of imagination develop into a claim of a way appurtenant to the whole Peebles farm. If the’ claim could be sustained that this was a way appurtenant to 4 acres of the Peebles farm, it could
 
 *323
 
 be shown by the same reasoning to be a way appur- ' tenant to all the farm. After these conveyances had been made to The Portsmouth Rim & Spoke Company it conveyed to The Norfolk & Western Railway Company a 60-foot strip off of the north end thereof, thereby severing the connection of the remainder of the 4 acres held by it with the 30-foot strip now claimed as a roadway. In this deed to the Norfolk & Western Railway Company no right of way is reserved over the 60-foot strip. It is true that the testimony shows that the railway company has put in a crossing running diagonally from the residue of defendant in error’s land to this 30-foot strip, but there is no claim that the defendant in error has any right to the use of this crossing except at the will of the railway company. This 30-foot strip extends only to the north side of the railway tracks and never did extend to this 3-acre tract. True, the driveway was continued beyond this 30-foot strip over and across the railway tracks and upon the lands purchased from the Rhodes heirs, for the purposes of the successive owners of all this property, up until the time of the severance of title by the reconveyance to Peebles. This litigation, however, is confined to the strip of ground 30 feet wide and extending 1208 feet south from the Gallia pike. It is this strip of land that is described in the amended petition; it is this strip of land that defendant in error claims the right to travel over, and it is this strip of land that the amended petition charges the plaintiff in error with fencing and refusing to permit plaintiff to pass over or use as a roadway. It is clear from the evidence that this strip of land,
 
 *324
 
 although it has been used as and for a roadway, is neither contiguous to nor appurtenant to the 3-acre tract, nor was it ever devoted to that exclusive purpose. The most that can be said about it is, that while one proprietor owned all these tracts it used this roadway for its own convenience and for its own purposes, irrespective of the different parcels of land owned by it.
 

 It is urged upon the attention of this court that the circuit court found as a fact that this roadway was reasonably necessary to the enjoyment of the premises owned by defendant in error and added materially to the value of said premises. That is undoubtedly true in so far as it applies to the conditions existing at the time of the commencement of this litigation, but it was not the fact nor is there any evidence tending to prove that that was the condition at the time the property was reconveyed to Peebles. - On the contrary, it is admitted that Peebles then owned the entire farm reaching to the Gallia pike, and that he could travel over his own farm to the highway. At that time there was a 16-foot alley on the west side of the land Peebles had leased to The Little Kanawha Lumber Company which extended from the railway tracks directly north of this tract to the Gallia pike, so that Peebles could not then claim that a way over other lands of his grantor was reasonably necessary to the enjoyment of the premises conveyed to him, and the rights of this defendant in error must be measured by the same rule that would apply to Peebles at that time, and not to the conditions as they existed at the time of the commencement of this action.
 

 
 *325
 
 Our attention is also called to the statement that the circuit court found as a fact that this roadway, was appurtenant to said premises. There is no such finding by the circuit court. On the contrary, the language is as follows: “And was used as an appurtenance to said premises, since the date of the purchase of the same by the plaintiff.” Defendant in error relies on the claim that this roadway was appurtenant to the premises at the time The Yellow Poplar Lumber Company conveyed to Peebles. Unless it was then a way appurtenant thereto Peebles acquiréd by his deed no right or interest therein, and of course could pass none to his devisees, nor could they in turn convey any interest therein to their grantees. If the circuit court had found as a fact that this was a way appurtenant to these premises at the time of the repurchase by Peebles from The Yellow Poplar Lumber Company, such finding would not foreclose further inquiry by this court. That is a question of law, especially where there is no conflict of evidence, and even if there had been a conflict of evidence, then, resolving every disputed question of fact in favor of the plaintiff below, the question of law would still be presented whether there is any evidence in support of a finding that the way was a way appurtenant to the premises at the time of the conveyance to Peebles. Clearly. There is no such evidence.
 

 For these reasons the judgment of the circuit court will be reversed and judgment for plaintiff in error upon the facts found by the circuit court.
 

 
 *326
 

 Judgment reversed. Judgment for plaintiff in error.
 

 Nici-iols, C. J., Shauck, Johnson, Wanamaker and Wilkin, concur.
 

 Newman, J., not participating.